```
                  UNITED STATES DISTRICT COURT
                           FOR THE
                      DISTRICT OF VERMONT

HARTFORD UNDERWRITERS INSURANCE    :
COMPANY and TOBY A. YOUNG,         :
                                   :
               Plaintiffs,         :
                                   :
          v.                       :    File No. 1:09-cv-00267-jgm
                                   :
THE CINCINNATI INSURANCE COMPANY,  :
                                   :
               Defendant.          :
_____:
```

OPINION AND ORDER
(Docs. 27, 36, 44)

Plaintiffs Hartford Underwriters Insurance Co. and Toby A. Young, and Defendant Cincinnati Insurance Co., have cross-moved for summary judgment on the question of whether Ms. Young was "occupying" a van insured by Cincinnati Insurance Co. Ms. Young had been loading her skis into the back of the van, which was parked in a snowy roadway, and intended to proceed to a passenger door when she was struck by an oncoming pick-up truck. The truck pinned her to the van, causing grave injuries to her legs and pelvis.

For the reasons that follow, this Court holds the definition of "occupying" under Cincinnati's policy is ambiguous when applied to these facts, and the latent ambiguity should be construed against Cincinnati in favor of coverage. Even if ambiguity did not call for construing the policy in Young's favor, of the two competing interpretations advanced by the

parties, the more reasonable reading of the Cincinnati policy includes Young's claim for under-insured motorist coverage. Cincinnati's coverage is therefore primary, and Hartford's is excess, and once Cincinnati's obligations as primary insurer are determined, Hartford may be reimbursed for sums paid that exceed its obligations as excess insurer.

I.  Background

The following facts in the record are undisputed for the purposes of both motions.  On the date of the accident, March 7, 2007, Toby Young was participating in a five-day cross-country ski and yoga program with Elderhostel, contracted with Craftsbury Center, Inc.  Young, a healthy, active 70-year-old woman, spent the afternoon cross-country skiing with a Craftsbury group that had departed the Craftsbury Cross-Country Ski Center.  A Craftsbury employee, Corrine Royer, drove a Craftsbury van to pick up Young's group at the end of their ski trail.  The van already contained a few skiers Royer had picked up from a different trailhead.  Royer parked the van in the southbound lane of a roadway, at the bottom of a slick, snow-covered hill.  Following Royer's instructions, Young took off her skis and went to the rear of the van, where the rear double doors were open, and loaded her skis.  Cincinnati does not dispute that Young, after loading her equipment, planned to walk around the open rear

van doors to a passenger door with the intent of getting into the van.[1]

The accident occurred when Jesse Peters, driving a pickup truck insured by Peerless Insurance Company, crested the hill and saw the van below, blocking his lane. Peters lost control as he descended and struck Young, pinning her between the pick-up and the back of the van. Young's legs and pelvis were crushed. She sustained injuries to her liver, multiple fractures, and a degloving of her upper left thigh, and ultimately incurred $422,427 in medical expenses.

---

[1] For the purposes of Hartford's motion, the following facts are in dispute. Cincinnati disputes that at the moment Young was struck, she was facing into the back of the van. Cincinnati contends it is not clear from the record whether Young was still in the process of loading her skis or whether she had completed loading them. Cincinnati also claims there is evidence contradicting Young's deposition testimony she was leaning forward, bending at the waist with her tights touching or close to touching the van, with her upper body leaning into the interior of the van at the moment she was struck. The other accident victim, Anne Poland, recollects that at some point before she was struck, she was alone between the open van doors and Young was at the outer area to the right side of the van. Cincinnati claims there is a dispute regarding whether Young was inside the open van doors. While these facts are disputed, if Young can be said to be occupying the van based on the undisputed facts alone, they are not material.
    For the purposes of Cincinnati's motion, Cincinnati recognizes the Court must view the facts in a light most favorable to Hartford and does not dispute that at the moment of impact, Young was behind the van, between the outward-swinging rear doors, and was perhaps touching the bumper with her lower body and leaning into the van in the act of loading her skis in the van's cargo area. (Cincinnati Undisputed Facts, Doc. 36-1, ¶ 6.)

Young, through counsel, made a claim against Peters and Peerless Insurance Co. and settled for its $100,000 policy limit. Before settling, Young, who had a personal auto insurance and umbrella policy with Hartford, notified it of her intent to make a claim against Cincinnati for under-insured motorist ("UIM") benefits. Cincinnati's letter of July 29, 2008, however, "questioned" whether Young qualified as an "insured" for coverage based on information she was "loading" the van at the time of the accident, and it refused coverage.

Under Cincinnati's policy, Young is an "insured" for purposes of under-insured motorist coverage if she was, at the time of her accident and injury, "occupying" the Craftsbury van. Cincinnati's policy defines "occupying" as "in, upon, getting in, on, out or off." (Doc 1-3, Compl. Ex. 3, p. 4 of Uninsured Motorists Coverage Endorsement.)

Young then presented a UIM claim to Hartford and filed suit for those benefits in Young v. Hartford, 1:08-cv-182-jgm-jmc. More than three months after Hartford filed its answer, Young's deposition suggested Cincinnati may have improperly denied coverage. Hartford sought leave to implead Cincinnati in the action, seeking a declaration Cincinnati was the primary insurer. Magistrate Judge Conroy denied the request in an Opinion and Order docketed August 3, 2009. See Doc. 30 in 1:08-cv-182-jgm-jmc. Judge Conroy reasoned Young was not required to first

4

exhaust all other potential coverage before recovering from Hartford, noted the overriding purpose of the UIM statute was to ensure swift recovery for victims of under-insured drivers, and concluded impleader would cause Young prejudicial delay in recovering on her claim for those benefits and complicate the trial.  Judge Conroy noted Hartford could rely on the UIM policy's "other insurance" clause to seek subrogation or indemnification from other available liability insurance after it provided coverage to Young.

   Hartford ultimately agreed to settle with Young for $750,000.  Hartford now brings this action to recover from Cincinnati as subrogee of Young, asserting Cincinnati wrongfully denied Young's UIM claim and breached its policy, because Young was occupying the Craftsbury van and is therefore considered an "insured" for the purpose of UIM benefits under the Cincinnati policy.  Hartford's Complaint seeks declaratory judgment that Cincinnati owes primary under-insured motorist benefits to Young, Hartford's coverage is excess, and asserts claims for breach of contract and unjust enrichment.  Hartford seeks recovery of $750,000 in damages together with fees and costs.

   Hartford has moved for partial summary judgment, asserting there is no genuine dispute of material fact that Toby Young was "occupying" the van such that she would be entitled to UIM benefits under the Cincinnati policy, Cincinnati's UIM coverage

is primary and Hartford's coverage is excess, and Hartford, therefore, as subrogee of Young, is entitled to summary judgment on its claim Cincinnati breached its contract by wrongful denial of coverage and its claim for unjust enrichment.  (Doc. 27.)

Cincinnati cross-moves for summary judgment on grounds Young was not "occupying" the insured van, even accepting Plaintiffs' allegations and taking the facts in a light most favorable to Plaintiffs, because although Young intended to walk around the back of the van to a passenger door to get in, she had not yet done so at the time of impact.  (Doc. 36.)

Toby Young joins in Hartford's motion for summary judgment and in its opposition to Cincinnati's motion.  (Doc. 44.)

II.  Summary Judgment Standard

Summary judgment should be granted only when there is "no genuine issue as to any material fact" and the moving party "is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "[F]acts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts."  Scott v. Harris, 550 U.S. 372, 380 (2007).  "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine*

issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

"Where both parties have moved for summary judgment, 'the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration.'" Murray v. Int'l Bus. Machs. Corps., 557 F. Supp. 2d 444, 448 (D. Vt. 2008) (citing Schwabenbauer v. Bd. of Educ. of Olean, 667 F.2d 305, 314 (2d Cir. 1981)).

III. Discussion

    A.    Hartford's Motion for Summary Judgment

        1.    Whether Young was "Occupying" the Craftsbury Van

For Hartford's motion, even if the parties dispute whether Young was touching or leaning into the van at the moment she was pinned between the van and the pickup truck, the parties do not dispute that at the moment she was struck, she was at the rear of the van, the rear van doors were open, she had just loaded her skis, and she intended to proceed to a passenger door to enter the van.

Hartford's motion presents a question of law regarding whether an injured party can be said to be "occupying" a vehicle under Cincinnati's policy definition when a party has begun the process of "getting in" the vehicle by loading equipment onto it with an intent to enter the vehicle via a passenger door.

7

Cincinnati argues the policy's definition of "occupying" is clear and unambiguous. Under the policy, "occupying" means "in, upon, getting in, on, out or off." The terms comprised in this definition of "occupying" are not further defined by the policy. Terms of an insurance policy are read "according to their ordinary and popular meaning.'" Sperling v. Allstate Indem. Co., 944 A.2d 210, 216 (Vt. 2007). "Any ambiguities in insurance policies are construed in favor of finding coverage. As with other contracts, the determination of ambiguity is a question of law . . . ." DeBartolo v. Underwriters at Lloyd's of London, 925 A.2d 1018, 1022 (Vt. 2007). "If a term is subject to more than one reasonable interpretation, 'the ambiguity must be resolved in favor of the insured.'" Sperling, 944 A.2d at 213 (quoting Serecky v Nat'l Grange Mut. Ins., 857 A.2d 775 (Vt. 2004)).

On the undisputed facts, the issue is whether "getting in," or "getting . . . on," could encompass Toby A. Young's actions when she began the process of embarking by loading her skis at the back of the van with an intent to go around to a passenger door and climb in. An ambiguity exists in policy language "if reasonable people could differ as to the interpretation of the language at issue." Id. at 217.

While there is no patent ambiguity on the face of the policy, the terms comprising the definition of "occupying" are ambiguous when applied to facts of this case, because reasonable

people could differ regarding whether Ms. Young was "getting into" or "getting . . . on" the van at the time of impact, depending on which point in time one believes the process of embarking began.  Some could conclude "getting into" or "getting . . . on" began at the time she started loading her skis, because this was the first step in the process of entering a vehicle in which she intended to ride away, while others could conclude "getting on" should only encompass the process of getting into a passenger seat from a passenger door.

The parties agree there is no controlling Vermont precedent directly on point.  A review of cases from numerous jurisdictions addressing identical policy definitions of "occupying" indicates innumerable courts have differed widely in how they interpret the definition.

For example, the Texas Supreme Court has outlined at least twelve tests various state courts have used to determine whether a person was "occupying" a covered vehicle for the purpose of un- or under-insured motorist coverage given identical, or nearly identical, definitions.  <u>U.S. Fid. & Guaranty Co. v. Goudeau</u>, 272 S.W.3d 603, 606-08 (Tex. 2008).  The first of these is a four-prong test requiring (1) a causal connection between the injury and use of the vehicle; (2) geographic proximity to the vehicle; (3) a vehicle-oriented, rather than highway- or sidewalk-oriented injured party; and (4) engagement in a transaction essential to

9

use of the vehicle.  Id. (citing Gen. Accident Ins. Co. v. D'Allessandro, 671 A.2d 1233, 1235 (R.I. 1996)).  A second test recites the same elements but drops the third requirement.  Id. (citing Butzberger v. Foster, 89 P.3d 689, 696 (Wash. 2004)).

A third is a "zone-of-risk" or safety test, where a court determines whether a passenger, after exiting a car, has reached a position of safety away from the car.  Id. (citing Olsen v. Farm Bureau Ins. Co., 609 N.W.2d 664, 670-71 (Neb. 2000)).  The fourth is a "severed-relationship" test, where a court held a plaintiff had not severed his relationship with the insured car while holding a spare tire between cars so one could push the other without scratching bumpers.  Id. (citing Moherek v. Tucker, 230 N.W.2d 148, 152 (Wis. 1975)).  The fifth is a "chain-of-events" test, where a court considers whether occupancy in the insured vehicle "started the chain of events" resulting in injury.  Id. (citing Dawes v. First Ins. Co. of Hawai'i, 883 P.2d 38, 53 (Haw. 1994)).

Sixth is a "substantial-nexus" test which considers whether there is a substantial nexus between the insured vehicle and the injury.  Id. (citing Torres v. Travelers Indem. Co., 793 A.2d 592, 593 (N.J. 2002), where injured driver was approaching van to embark it).  In a seventh "reasonable relationship" test, a court considered whether a party injured by a hit-and-run truck driver leaving the scene of an accident could recover because his

attempt to step out of his vehicle to identify the departing truck was "directly and reasonably related to the operation and use of the insured vehicle." Genthner v. Progressive Cas. Ins. Co., 681 A.2d 479, 482 (Me. 1996) (finding latent ambiguity in the definition of "occupying" and construing the policy against the insurer after surveying decisions that applied either a liberal or narrow interpretation). An eighth test asks whether an injured party was in "close proximity" to the vehicle. Goudeau, 272 S.W.3d at 607 (citing Newman v. Erie Ins. Exch., 507 S.E.2d 348, 350 (Va. 1998)). A ninth "vehicle-orientation" test asks whether the injured party was engaged in a transaction oriented to the use of the auto. Id. (citing Allstate Ins. Co. v. Graham, 750 P.2d 1105, 1106 (N.M. 1988)).

Yet another test asks whether a claimant was either in close proximity to or engaged in a task related to the operation of the vehicle. Id. (citing Nat'l Union Fire. Ins. Co. v. Fisher, 692 A.2d 892, 896 (Del. 1997)). An eleventh test requires a showing of both close proximity to a vehicle and orientation of the claimant's activities to the vehicle. Id. (citing Simpson v. U.S. Fid. & Guaranty Co., 562 N.W.2d 627, 629-31 (Iowa 1997)). Finally, the twelfth test described by the Texas Supreme Court is a "plain and ordinary meaning" test. Id. (citing Keefer v. Ferrell, 655 S.E.2d 94, 99 (W.Va. 2007), where court held claimant was in process of getting onto truck where he was

driving a tractor toward the covered truck's trailer to load the tractor).

That courts have differed so widely in interpreting this policy language, which is clear on its face, but is subject to competing interpretations when courts attempt to apply the definition to facts, demonstrates the latent ambiguity.

Therefore, Cincinnati's definition of "occupying" contains a latent ambiguity which should be resolved in favor of Young, because Cincinnati, as an insurer, "is in a far better position to avoid latent ambiguity in the text of a policy." Sanders v. St. Paul Mercury Ins. Co., 536 A.2d 914, 916 (Vt. 1987). Reasonable minds could differ regarding whether Cincinnati's policy would provide coverage where Young was pinned against the van by an under-insured motorist after having begun the process of embarking by loading her skis at the back of the van, and where she was very close to the van, if not touching it, and intended to proceed to a passenger door.  Even if this Court were to conclude the definition of "occupying" is not ambiguous, the plain, ordinary and popular meanings of the terms "getting on" or "getting in" would most reasonably encompass an injured party's acts as she began the process of embarking a vehicle by loading belongings at the rear doors, with an intent to proceed to a passenger door.  The gerund "getting," combined with the words "on" or "in" suggests a process which could reasonably begin with

loading belongings into a vehicle.  A reasonable reading of the policy would include Young's claim.

Of the cases cited in the parties' briefs, none bind this Court, but two have facts somewhat similar to those in our case.  In <u>Abrell v. Employers Insurance of Wausau</u>, the Appellate Court of Illinois held that a vendor, who was struck by a car as she was leaning into the van bed reviewing and retrieving papers with her supervisor, was "occupying" the van in the sense she was "in" or "upon" it, because she was in contact with the van and had been using the rear as a makeshift desk.  <u>Abrell</u>, 796 N.E. 2d 643, 645-46 (Ill. App. Ct. 2003).  This was true even though she did not intend to use the van for transportation.  <u>Id.</u> at 646.

In contrast, in <u>U.S. Fid. & Guaranty Co. v. Goudeau</u>, the Supreme Court of Texas held Goudeau, who stopped his car to help a stranded motorist on a Houston freeway and was severely injured when a third car smashed into both cars and pinned him between the cars and a retaining wall, was not "occupying" his car by being "upon" it because he had exited and walked around the front.  <u>Goudeau</u>, 272 S.W.3d 603, 606-09 (Tex. 2008).  The court rejected the "causal connection" test applied by the lower court, declined to adopt any of a litany of tests from other jurisdictions, and instead strictly construed the term "upon," reasoning that merely being "upon" the car by virtue of the collision did not satisfy the policy definition.  <u>Id.</u> at 606.

Arguably, Ms. Young has a stronger claim she was occupying the van than the one presented in <u>Abrell</u> because, unlike the injured party in <u>Abrell</u>, she intended to become a passenger at the moment she was struck.  Ms. Young's claim can be distinguished from that of the injured party in <u>Goudeau</u> because she, unlike Goudeau, had begun the process of getting in or on the van at the time she was injured.  Even if this Court disregarded the latent ambiguity in the policy and considered these cases persuasive authority in deciding the merits of Young's claim, the most reasonable reading of Cincinnati's policy would include Young's claim.

    2.   <u>Whether Cincinnati's Coverage is Primary</u>

Hartford seeks a declaration that Cincinnati's UIM coverage is primary and Hartford's coverage is excess.  Cincinnati's policy provides in relevant part:

"For any covered 'auto' you own, this Coverage Form provides primary insurance.  For any covered 'auto' you don't own, the insurance provided by this Coverage Form is excess over any other collectible insurance."  (Doc. 4-4, Cincinnati's Form AA 101 09 00, p. 9, section 5(a).)

Hartford's "Other Insurance" clause provides, in relevant part: ". . . any insurance we provide with respect to a vehicle you do not own shall be excess over any other collectible

insurance similar to the insurance provided under this Part of the policy."  (Doc. 4-3, Hartford's Form 8444, p. 12.)

There is no dispute Cincinnati's insured owned the Craftsbury van.  Because the policy must be construed to cover Young's claim for coverage on grounds Young was occupying the Craftsbury van, Cincinnati's coverage is primary, and Hartford's policy is excess.  See State Farm Mut. Auto Ins. Co. v. Powers, 732 A.2d 730, 735-36 (Vt. 1999) ("coverage is primary when the claimant is injured while occupying a vehicle owned by the policyholder and is excess when the claimant is injured while occupying a vehicle not owned by the policyholder").

Cincinnati's argument that Hartford settled with Young as a "volunteer" and should be barred from recovering from Cincinnati is unavailing.  "[O]ne is a volunteer if he pays while under no obligation to pay or when no interest of his is protected by payment."  Norfolk & Dedham Fire Ins. Co. v. Aetna Cas. & Sur. Co., 318 A.2d 659, 661 (Vt. 1974) (citing Couch, Cyclopedia of Insurance Law).  "[T]he concept of 'voluntariness' should be strictly construed and limited."  Id. at 662.  Here, at the time Hartford settled with Young, its insurance was only "excess" to the extent Cincinnati's coverage was collectible and available to Young, and Cincinnati had denied coverage.  Young was not required to first exhaust or litigate her potential coverage with Cincinnati before recovering from Hartford.

Once Cincinnati's obligations as primary insurer are determined, Hartford is entitled to recover from Cincinnati the sums paid to Young that exceeded what it is obligated to pay as excess insurer. Therefore, Hartford's motion for summary judgment is granted.

B.   Cincinnati's Motion for Summary Judgment

Cincinnati moves for summary judgment on the issue of "occupying," on grounds Young was not occupying the Craftsbury van even when assuming the facts in a light most favorable to Hartford. For the purposes of its own motion, only, Cincinnati concedes Young, at the moment of impact, was between the outward-swinging rear doors of the van, perhaps touching the bumper with her lower body, and was leaning into the van while loading her skis. (Doc. 36-1 ¶ 6.) It also does not dispute Young had already formed the intent to walk around to a passenger door after loading her skis. Id. at ¶ 5.

For the purposes of Cincinnati's motion, Young's actions fall within the plain meaning of at least two of the terms comprised in the definition of "occupying," because, if immediately before the moment of impact the upper portion of her body was inside the van and she was leaning on it, she could be said to be "in" and "upon" the van. Cincinnati's motion for summary judgment, therefore, is denied.

IV.  Conclusion

Hartford Underwriters Insurance Company's Motion for Partial Summary Judgment (Doc. 27) and Toby A. Young's Motion for Summary Judgment on the Issue of "Occupying" (Doc. 44) are GRANTED. Cincinnati Insurance Company's Motion for Summary Judgment on the Issue of "Occupying" (Doc. 36) is DENIED.  The Court finds:

(1)  the Cincinnati policy definition is ambiguous as applied to these facts and is therefore construed against Cincinnati;

(2)  in the alternative, the most reasonable reading of the Cincinnati policy would include Young's claim;

(3)  Young is entitled to UIM benefits under the Cincinnati policy; and

(4)  once Cincinnati's obligations as primary insurer are determined, Hartford is entitled to recover from Cincinnati sums paid to Young that exceeded what it is obligated to pay as excess insurer.

SO ORDERED.

Dated at Brattleboro, in the District of Vermont, this 11th day of January, 2011.

/s/ J. Garvan Murtha
Hon. J. Garvan Murtha
Senior United States District Judge